FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUN 04 2014

SEAN F. McAVOY, CLERK
_____DEPUTY
SPOKANE, WASHINGTON

MICHAEL C. ORMSBY
United States Attorney
Eastern District of Washington
Matthew F. Duggan
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 13-CR-00100-RMP |
| Plaintiff, | |
| vs. | Plea Agreement |
| EUSEVIO CHAVALLO, JR., | Fed. R. Crim. P. 11(c)(1)(C) |
| Defendant. | |

Plaintiff, United States of America, by and through Michael C. Ormsby, United States Attorney, for the Eastern District of Washington, and Matthew F. Duggan, Assistant United States Attorney for the Eastern District of Washington, and Defendant, EUSEVIO CHAVALLO, JR., and the Defendant's counsel, Robert M. Seines, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

The Defendant agrees to plead guilty to Counts 1 and 4 of the Superseding Indictment filed on May 21, 2014, charging the Defendant with Distribution of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in

PLEA AGREEMENT - 1
ChavalloPleaAgreementCounts1&4

violation 21 U.S.C. § 841(a)(1), (b)(1)(C), and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

The Defendant, understands that the charge of Distribution of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 1) is a class C felony and carries a statutory maximum penalty of not more than a 20 year term of imprisonment, not less than a 3-year term up to life supervised release, a fine not to exceed $1,000,000; denial of certain federal benefits; and a $100 special penalty assessment; and that the charge of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 4) is a class A felony and carries a maximum statutory penalty of not less than 5 years nor more than life imprisonment, consecutive to any other sentence imposed, up to a 5-year term of supervised release; a fine not to exceed $250,000; and a $100 special penalty assessment.

The Defendant further understands that a violation of a condition of supervised release carries an additional penalty of re-imprisonment for all or part of the term of supervised release without credit for time previously served on post-release supervision.

2. <u>Denial of Federal Benefits</u>:

The Defendant understands that by entering a plea of guilty to Count 1 the Defendant is no longer eligible for assistance under any state program funded under part A of title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out under the Food Stamp Act. 21 U.S.C. § 862a. Further, the Court may deny the Defendant's eligibility to any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

3. <u>The Court is Not a Party to the Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject this Plea Agreement. Sentencing is a matter that is solely within the discretion of the Court. The Defendant understands that the Court is under no obligation to accept any recommendations made by the United States and/or by the Defendant; that the Court will obtain an independent report and sentencing recommendation from the U.S. Probation Office; and that the Court may, in its discretion, impose any sentence it deems appropriate up to the statutory maximums stated in this Plea Agreement.

The Defendant understands that this is a Plea Agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) and that the United States may withdraw from this Plea Agreement if the Court imposes a lesser sentence than agreed upon. The Defendant

PLEA AGREEMENT - 3
ChavalloPleaAgreementCounts1&4

further understands that the Defendant will have the option to withdraw from this Plea Agreement if the Court imposes a sentence harsher than agreed upon.

4. <u>Waiver of Constitutional Rights</u>:

The Defendant, EUSEVIO CHAVALLO, JR., understands that by entering this plea of guilty the Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

 (a). The right to a jury trial;

 (b). The right to see, hear and question the witnesses;

 (c). The right to remain silent at trial;

 (d). The right to testify at trial; and

 (e). The right to compel witnesses to testify.

While the Defendant is waiving certain constitutional rights, the Defendant understands the Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if the Defendant cannot afford to hire an attorney. The Defendant also acknowledges that any pretrial motions currently pending before the Court are waived.

4. <u>Elements of the Offenses</u>:

 (a). <u>Count 1</u>:

The United States and the Defendant agree that in order to convict the Defendant of Distribution of a Mixture or Substance Containing a Detectable Amount

PLEA AGREEMENT - 4
ChavalloPleaAgreementCounts1&4

of Methamphetamine, in violation 21 U.S.C. § 841(a)(1), (b)(1)(C), the United States would have to prove beyond a reasonable doubt the following elements:

    (a). First, on May 15, 2013, in the Eastern District of Washington, the Defendant, EUSEVIO CHAVALLO, JR., knowingly and intentionally distributed methamphetamine; and

    (b). Second, the Defendant knew that it was methamphetamine or some other prohibited drug.

    (c). Third, the substance was in fact methamphetamine.

(b). <u>Count 4</u>:

The United States and the Defendant agree that in order to convict the Defendant of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), the United States would have to prove beyond a reasonable doubt the following elements:

    (a). First, on June 26, 2013, in the Eastern District of Washington, the Defendant, EUSEVIO CHAVALLO, JR., committed the offense of possession with intent to distribute methamphetamine, a drug trafficking crime prosecutable in federal court;

    (b). Second, the Defendant knowingly possessed the firearm;

(c). Third, the possession of the firearm was in furtherance of the Defendant's possession with intent to distribute methamphetamine.

5. Factual Basis and Statement of Facts:

The United States and the Defendant stipulate and agree that the following facts are accurate; that the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for EUSEVIO CHAVALLO, JR.'s guilty plea. This statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts which are relevant to the guideline computation or sentencing, unless otherwise prohibited in this agreement. Defendant admits to these facts below.

A confidential human source (CHS) identified a possible source of supply as Eusevio CHAVALLO. Spokane Police Department utilized the CHS to contact and make two separate purchases of methamphetamine from CHAVALLO.

On January 2, 2013, the CHS contacted Detective Presta to advise him that he had been contacted by CHAVALLO from telephone number (509) 302-XXXX. The CHS suspected that CHAVALLO contacted the CHS in an attempt to distribute methamphetamine.

On January 25, 2013, the CHS made a recorded phone call to CHAVALLO at (509) 302-XXXX and spoke to CHAVALLO about two other individuals involved in this investigation. MR. CHAVALLO DID NOT KNOW THE TWO INDIVIDUALS.

PLEA AGREEMENT - 6
ChavalloPleaAgreementCounts1&4



On February 19, 2013, the CHS reviewed multiple pictures of Hispanic males, one being Eusevio CHAVALLO. The CHS was able to positively identify CHAVALLO from the photographs.

On May 3, 2013, the CHS was provided an audio recording device and met with CHAVALLO in the Tri-Cities area. The CHS and CHAVALLO spoke about specific prices for methamphetamine as well as a telephonic code which would be used to order controlled substances over the phone in an attempt to conceal any communications about the trafficking in controlled substances. CHAVALLO was driving a red Chevrolet pick-up bearing Washington License plate number B70145 during this meeting.

On May 14, 2013, the CHS made a recorded phone call to CHAVALLO and ordered one ounce of methamphetamine to be delivered on 05/15/2013. CHAVALLO confirmed the order and agreed to deliver the methamphetamine.

On May 15, 2013, the CHS was provided with pre-recorded U.S. currency and equipped with an audio recording device before conducting a controlled purchase of one (1) ounce of methamphetamine for $1,400 from CHAVALLO. CHAVALLO met the CHS at a restaurant located at Third Avenue and Division in Spokane Washington and directed the CHS into the restaurant's rest room. Once inside the rest room, CHAVALLO removed an item from his pocket and gave it to the CHS. The CHS was

able to identify the item as what the CHS believed to be methamphetamine. The CHS then paid CHAVALLO from the pre-recorded U.S. currency for the substance.

A portion of the substance the CHS had purchased from CHAVALLO was field tested presumptive positive for methamphetamine. The gross weight of the methamphetamine was approximately 28 grams.

On June 3, 2013, the CHS made a recorded phone call to CHAVALLO and ordered two ounces of methamphetamine to be delivered on June 4, 2013. CHAVALLO confirmed the order and agreed to deliver the methamphetamine.

On June 4, 2013, the CHS conducted a controlled purchase of approximately two (2) ounces of methamphetamine for $2,800 from CHAVALLO. The CHS was provided with pre-recorded U.S. currency and equipped with an audio recording device. Surveillance officers observed CHAVALLO at 400 S. Thor, Spokane, Washington, the pre-arranged location, in his red Chevrolet truck with Washington license plate B70145V.

Surveillance officers observed CHAVALLO contact the CHS and saw the CHS enter CHAVALLO's vehicle. CHAVALLO drove the CHS for a brief period of time then returned and parked in an area near 400 S. Thor. CHAVALLO then drove the CHS back to his/her vehicle. CHAVALLO departed the location in the red Chevrolet truck. The CHS provided CHAVALLO with the pre-recorded U.S. currency in return for a substance in a plastic bag. A portion of the substance the CHS purchased from

PLEA AGREEMENT - 8
ChavalloPleaAgreementCounts1&4

CHAVALLO was tested and determined to contain 54.4 grams of actual methamphetamine.

On June 25, 2013, Detective Presta, Detective Richmond and the CHS made a recorded phone call to CHAVALLO ordering four ounces of methamphetamine to be delivered on June 26, 2013.

On June 26, 2013, Task Force Officer Clem was monitoring a residence located at 1217 North Edison Place, Kennewick, Washington where CHAVALLO's vehicle had been seen on previous occasions. Law enforcement observed CHAVALLO exit the residence and place an item in a toolbox located in the bed of the 2002 Chevrolet pickup, bearing Washington license plate B70145V. TFO Clem then observed CHAVALLO leave the residence in the Chevrolet pickup. Tri-Cities Task Force Officers maintained continued surveillance of CHAVALLO after he left his residence and followed CHAVALLO northbound on Highway 395 to Ritzville, Washington and then eastbound on Interstate 90 to a pre-determined location.

Officers stopped CHAVALLO on Interstate 90 at the Cheney/Tyler exit area and executed a federal search warrant issued on June 13, 2013. In the bed of the truck, law enforcement officers located a black bag [IN A LOCKED TOOL BOX] which contained two large baggies of a crystal like substance that appeared to be methamphetamine. The substance was tested and determined to contain 109.0 grams of actual methamphetamine. Officers continued to search the bed of the truck locating a fully loaded 9 mm Kel-Tec, Model

No. P11, Serial No. A7V46, with one round of ammunition in the chamber and nine rounds in the magazine. The firearm was located in a boot directly underneath the black bag containing the methamphetamine. Officers also located a scale in a tennis shoe in the same area of the truck. The vehicle CHAVALLO was driving was registered in his name.

After waiving his *Miranda* rights, CHAVALLO admitted he was in the business of selling methamphetamine.

6. <u>The United States Agrees:</u>

(a). <u>Dismissals:</u>

At the time of sentencing, the United States agrees to move the Court to dismiss counts 2 and 3 of the Superseding Indictment which charge the Defendant with Distribution of 50 grams or more of pure (actual) Methamphetamine and Possession with Intent to Distribute 50 grams or more of pure (actual) Methamphetamine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii).

(b). <u>Not to File Additional Charges:</u>

The United States Attorney's Office for the Eastern District of Washington agrees not to bring any additional charges against the Defendant based upon information in its possession at the time of this Plea Agreement and arising out of Defendant's conduct involving illegal activity charged in this Information, unless the Defendant breaches this Plea Agreement any time before or after sentencing.

PLEA AGREEMENT - 10
ChavalloPleaAgreementCounts1&4

7. United States Sentencing Guideline Calculations:

The Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "U.S.S.G.") are applicable to this case and that the Court will determine the Defendant's applicable sentencing guideline range at the time of sentencing.

    (a). Base Offense Level:

        (1). Count 1:

The United States and the Defendant agree that the base offense level for Distribution of a Mixture or Substance Containing a Detectable Amount of Methamphetamine, in violation 21 U.S.C. § 841(a)(1), (b)(1)(C) is 34 based on at least 150 grams but less than 500 grams of actual methamphetamine. See USSG 2D1.1(c)(3).

        (2). Count 4:

The United States and the Defendant agree that the guideline sentence for Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) is 5 years imprisonment consecutive to any other sentence. See USSG 2K2.4(b).

(c). <u>Acceptance of Responsibility:</u>

If the Defendant pleads guilty and demonstrates a recognition and an affirmative acceptance of personal responsibility for the criminal conduct; provides complete and accurate information during the sentencing process; does not commit any obstructive conduct; accepts this Plea Agreement; and enters a plea of guilty no later than the next pre-trial date, the United States will recommend that the Defendant receive a three (3) level downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. §3E1.1(a).

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, not recommend a three (3) level downward reduction for acceptance of responsibility if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

Furthermore, the Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment, as a condition to this recommendation by the United States.

PLEA AGREEMENT - 12
ChavalloPleaAgreementCounts1&4

(d). Multiple Count Analysis:

Because counts 1 and 4 are connected by a common criminal objective or a common scheme or plan, they form a single group for sentencing purposes resulting in no increase in the final offense level. See USSG § 3D1.1(a)(1); 3D1.2(b).

(e). Final Offense Level:

Therefore, the United States and the Defendant agree that the Defendant's final adjusted offense level would be 31.

(f). Criminal History:

The United States and the Defendant have made no agreement and make no representations as to the criminal history category, which shall be determined after the Presentence Investigative Report is completed.

9. Incarceration:

The United States agrees to recommend a 36 month term of imprisonment on Count 1 and a 60-month consecutive term of imprisonment on Count 4, resulting in a total sentence of 96 months. The Defendant agrees to recommend an 18 month term of imprisonment on Count 1and a 60-month consecutive term of imprisonment on Count 4, resulting in a total sentence of 78 months.

Pursuant to Fed.R.Crim.P. 11(c)(1)(C), the Defendant reserves the right to withdraw his plea if the Court imposes a term of imprisonment in excess of 96

PLEA AGREEMENT - 13
ChavalloPleaAgreementCounts1&4

months and the United States reserves the right to withdraw if the Court imposes a term of imprisonment less than 78 months.

10. <u>Criminal Fine</u>:

The United States and the Defendant are free to make whatever recommendation concerning the imposition of a criminal fine that they believe is appropriate.

11. <u>Supervised Release</u>:

The United States and the Defendant agree to recommend that the Court impose a five (5)-year term of supervised release to include the following special conditions, in addition to the standard condition of supervised release:

(a). that the Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs;

(b). that the Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

The ultimate term of supervised release is not subject to the Fed.R.Crim.P. 11(c)(1)(C) agreement.

12. <u>Mandatory Special Penalty Assessment</u>:

The Defendant agrees to pay the $200 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing,

pursuant to 18 U.S.C. § 3013 and shall provide a receipt from the Clerk to the United States before sentencing as proof of this payment.

13. <u>Payments While Incarcerated</u>:

If the Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, the Defendant agrees to earn the money to pay toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

14. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The Defendant and the United States agree that the United States may at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its recommendation for sentence if, prior to the imposition of sentence, the Defendant is charged or convicted of any criminal offense whatsoever or if the Defendant tests positive for any controlled substance.

15. <u>Appeal Rights</u>:

In return for the concessions that the United States has made in this Plea Agreement, the Defendant agrees to waive the right to appeal the sentence and conviction if the Court imposes a total sentence of not more than 96 months imprisonment, a 5-year term of supervised release, waives imposition of the fine, and imposes not more than a $200 special penalty assessment.

Defendant further expressly waives his right to file any post-conviction motion attacking his conviction and sentence, including a motion pursuant to 28 U.S.C. §2255, except one based on ineffective assistance of counsel based on information not now known by Defendant and which, in the exercise of due diligence, could not be known by Defendant by the time the Court imposes sentence. Should the Defendant successfully move to withdraw from this Plea Agreement or should the Defendant's conviction on Count One of the Indictment be dismissed, set aside, vacated, or reversed, this Plea Agreement shall become null and void; the United States may move to reinstate all counts of Indictment No. 13-CR-00100-RMP; and the United States may prosecute the Defendant on all available charges. Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack of the conviction or sentence, including, but not limited to, proceedings pursuant to 28 U.S.C. § 2255 (writ of habeas corpus).

16. <u>Inapplicability of 18 U.S.C. § 3582(c)(2)</u>:

The Defendant stipulates and agrees that if the Court accepts the parties' Fed. R. Crim. P. 11(c)(1)(C) recommendations and imposes a total prison term of no longer than ninety-six (96) months, that the sentence is *not* "based on" a sentencing range established by the Sentencing Guidelines and, as such, acknowledges that 18 U.S.C.

PLEA AGREEMENT - 16
ChavalloPleaAgreementCounts1&4

§ 3582(c)(2), which authorizes the Court to modify the sentence based on a subsequent change in the applicable guideline, is not applicable.

17. <u>Integration Clause</u>:

The United States and the Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and the Defendant, and no other promises, agreements, or conditions exist between the United States and the Defendant concerning the resolution of the case. This Plea Agreement is binding only upon the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state or local authorities. The United States and the Defendant agree that this agreement cannot be modified except in a writing that is signed by the United States and the Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

MICHAEL C. ORMSBY
United States Attorney

_/s/ M. Duggan_       5-28-14
Matthew F. Duggan      Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into

PLEA AGREEMENT - 17
ChavalloPleaAgreementCounts1&4

this Plea Agreement. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

_____  _____
EUSEVIO CHAVALLO, JR.             Date
Defendant


I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept the Defendant's plea of guilty.

_____  _____
ROBERT M. SEINES                  Date
Attorney for the Defendant

PLEA AGREEMENT - 18
ChavalloPleaAgreementCounts1&4